UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| FIRST CONSTRUCTION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-155-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| GRAVELROAD ENTERTAINMENT, | ) | |
| LLC, SLADE BUMGARDNER, ADAM | ) | **MEMORANDUM OPINION** |
| LOWE, and DERRICK KINSEY, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of two motions for partial summary judgment and a motion in limine. [Record Nos. 58, 59, 60] Specifically, the Defendants have moved for summary judgment on the Plaintiff's claims against individual Defendants Slade Bumgarnder, Adam Lowe and Derrick Kinsey. Additionally, the Defendants seek judgment in their favor on the punitive damage claim. Further, they have moved to exclude a statement made in an E-mail by Defendant Slade Bumgardner. For the reasons discussed herein, the Court will grant the Defendants' motions.

## I.    BACKGROUND

This action arises out of a dispute between Plaintiff First Construction, LLC ("First Construction") and Defendant GravelRoad Entertainment, LLC ("GravelRoad") involving a construction project to build a children's wing at First United Methodist Church in Corbin, Kentucky. First Construction was the general contractor for the project. GravelRoad was a

contractor hired by the church to design and install lighting and sound equipment over a stage located in the building addition.  The basis of this lawsuit stems from First Construction's allegation that GravelRoad accepted a deposit of $208,685.00 to supply certain equipment, fixtures and services, including the design and installation of and sound and lighting system, but failed to do the work.  GravelRoad alleges that it was willing to perform the job but was asked to leave the job by First Construction.

On April 5, 2007, First Construction filed a Complaint in Whitley Circuit Court against GravelRoad and Slade Bumgardner, one of the members of GravelRoad, alleging breach of contract and fraud in connection with the misappropriation of $208,685.00 paid to GravelRoad. First Construction sought compensatory and punitive damages.  The Defendants removed the action to this Court based on diversity of citizenship.  First Construction then filed an Amended Complaint on August 3, 2007, naming Adam Lowe and Derrick Kinsey, the remaining two members of GravelRoad.  [Record No. 22]  The Defendants filed an answer and counterclaim against the Plaintiff for breach of contract and also sought to recover punitive damages.  [Record No. 23]

On February 15, 2008, the Defendants filed the motions that are currently pending before the Court.  Through these motions, the Defendants seek judgment in their favor on the claims asserted against individual Defendants Slade Bumgardner, Adam Lowe and Derrick Kinsey and on the Plaintiff's punitive damage claim.  Additionally, they seek to prevent the Plaintiff from introducing at trial a statement made by Slade Bumgardner and contained in an E-mail message.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists.  *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 983 (E.D.Ky. 1993).  Once a moving party has met its burden of production, "'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).  The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits to support its claims.  *Celotex*, 477 U.S. at 324.

In reviewing a party's motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, and summary judgment is appropriate whenever that non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (*quoting*

*Anderson*, 477 U.S. at 251-52.).

### III.    ANALYSIS

#### A.    The Motion for Summary Judgment on the Claims against Slade Bumgardner, Adam Lowe and Derrick Kinsey, individually

The Defendants argue that they are entitled to judgment in their favor on the claims

against individual Defendants because, as members of a limited liability company, Bumgardner,

Lowe and Kinsey are shielded from liability for the claims asserted against them.  In response,

the Plaintiffs argue that the Court should pierce the corporate veil and impute liability to

Bumgardner, Lowe and Kinsey as well as GravelRoad.  Specifically, the Plaintiff, contends that

GravelRoad and its individual members are joint and severally liable for the alleged breach of

contract and fraud claims and that Bumgardner, Lowe and Kinsey should not be dismissed

because a "jury [should] decide whether or not [the individual defendants] should be personally

liable for repayment of" the money. [Record No. 70] Thus, to determine whether the Defendants

are entitled to judgment as a matter of law on the claims against Bumgardner, Lowe and Kinsey,

individually, the Court must ascertain whether it is appropriate to pierce the corporate veil with

respect to the claims asserted in this action.

#### 1.    Breach of Contract

In general, "[a] party who suffers a loss from a corporation's breach [of contract]

ordinarily has recourse against the corporation and its assets or guarantors, if any." *Wilton Corp.*

*v. Ashland Castings Corp.*, 188 F.3d 670, 674 (6th Cir. 1999).  However, "it is fundamental

corporate law that a shareholder is not liable for a debt of the corporation unless extraordinary circumstances exist to impose liability." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). Liability against individual members exists when there is a piercing of the corporate veil. *White v. Winchester Land Dev. Corp.*, 584 S.W.2d 56, 63 (Ky. App. 1979).

Further, Kentucky courts are generally hesitant to pierce the corporate veil.[1]  *Hodak v. Madison Capital Mgmt.*, LLC, 2007 WL 1434875 (E.D. Ky. 2007) (citing *White*, 584 S.W.2d at 63 (stating, "[T]he corporate veil should only be pierced reluctantly and cautiously.").  Under Kentucky law, the corporate veil should not be pierced unless there is (1) "such a unity of ownership and interest" that the separate personalities of the corporation and its owner cease to exist, and (2) "the facts are such that an adherence to the normal attributes . . . of separate corporate existence would sanction a fraud or promote injustice." *White*, 584 S.W.2d at 61-62.

---

[1]    The Defendants suggest that either Kentucky or Tennessee law applies in this case.  However, they state that, under either law, it is not appropriate to pierce the corporate veil.  For the sake of clarity, the Court notes that Kentucky law applies in this case.  A federal court sitting in a diversity action must apply the choice of law rules of the forum state.  *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000).  The Sixth Circuit has held that "in a standard breach-of-contract case . . . the Kentucky courts would choose to adopt § 187 of the Restatement (Second) of Conflict of law (1971) as their analytical framework for addressing a contractual choice-of-law clause." *Id.* at 397.  Section 187 provides that:

> a contractual choice-of-law provision should be honored unless (1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (2) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest.

*Wallace*, 223 F.3d at 398.

In the present case, it does not appear that the parties selected a governing law.  Nevertheless, Kentucky has the most significant relationship to this transaction and these parties despite the fact that GravelRoad is a corporation organized under the law of the State of Tennessee.  Moreover, the Kentucky Supreme Court has stated that Kentucky law will apply to a contract issue if there are sufficient contacts and not overwhelming interests to the contrary.  *See Breeding v. Massachusetts Indem. and Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982).

"[T]he first element focuses on the relationship between the corporation and the owners or other corporate actors, while the second element concerns the relationship between the corporation and the plaintiff." *Thomas v. Brooks*, 2007 WL 1378510, *3 (Ky. App. May 11, 2007).

Courts have identified several factors to consider in determining whether to pierce the corporate veil. These factors include: "(1) undercapitalization; (2) a failure to observe the formalities of corporate existence; (3) nonpyament or overpayment of dividends; (4) a siphoning off of funds by the dominant shareholder(s); and (5) the majority shareholders having guaranteed corporate liabilities in their individual capacities." *Sudamax Industria e Comercio de Cigarros, Ltda. v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 847-48 (W.D. Ky. 2007) (citing *White*, 584 S.W.2d at 62). Generally, several of these factors must be present in order to justify piercing the corporate veil. *Id.* at 848.

As an initial matter, the Court notes that the Plaintiff has not alleged in its Complaint that the corporate veil should be pierced in order to find Bumgardner, Lowe and Kinsey personally liable for breach of contract. *See Morgan*, 652 S.W.2d at 85 (a theory of liability that the corporate veil should be pierced must be plead in the complaint); *Natural Res. and Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization;" a complaint which alleged neither is fatally defective). However, assuming that this allegation could be inferred from the factual pleadings in the Complaint, the Court will examine whether the Plaintiff has raised a genuine issue of material fact with respect to its veil piercing claim.

In its response to the Defendants' motion for summary judgment, the Plaintiff contends that the Court should pierce the corporate veil for two reasons. First, the Plaintiff states that it dealt solely with Slade Bumgardner and "it was his expertise and assurances [it] relied upon." [Record No. 70]  Second, the Plaintiff contends that Bumgardner, Lowe and Kinsey, individually, "perpetrated fraud" and "defrauded the plaintiff of its funds." [Record No. 70] With respect to the first argument, the Court notes that the Plaintiff has failed present sufficient evidence demonstrating that it did not know it was dealing with GravelRoad. In fact, the evidence is to the contrary. Notably, First Construction and/or the church did not enter into contracts with Slade Bumgardner, Adam Lowe or Derrick Kinsey individually. Rather, they entered into contracts with GravelRoad, the corporation in which these Defendants were members of theentity. Additionally, Greg Johnson, the construction manger, acknowledged in his affidavit that he dealt with Slade Bumgardner on the church project and that Bumgardner "held himself, his partners, and the defendant, GravelRoad Entertainment, LLC, out as being competent and experienced in providing the good and services for . . . the project." [Record No. 70, Aff. Greg Johnson] Further, Angie Blankenship, the former Executive Assistant at First Construction, admitted that she had no reason to believe she was dealing individually with Bumgardner, Lowe and/or Kinsey instead of GravelRoad. [Record No. 56, p. 21] Thus, based on the evidence in the record, it is apparent that the Plaintiff was aware that it was entering into a contract and was working with GravelRoad, not a particular member of the corporate entity. In addition, the Plaintiff has failed to present any other evidence that would justify piercing the corporate veil. Namely, the Plaintiff has failed to present evidence demonstrating that

GravelRoad was undercapitalized or that Bumgardner (or Lowe or Kinsey) ignored corporate formalities and/or blurred the distinction between themselves and the corporation.

### 2. Fraud

The Plaintiff also claims that the Court should pierce the corporate veil because Bumgardner, Lowe and Kinsey perpetrated fraud on First Construction. To assert a fraud claim under Kentucky law, a plaintiff must allege: (1) a material representation; (b) which is false; (c) known to be false or made recklessly; (d) made with inducement to be acted upon; (e) acted in reliance thereon; and (f) causing injury. *United Parcel Service v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). Further, Rule 9(b) provides that, in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). According to the Sixth Circuit, Rule 9(b) requires plaintiffs to "allege the time, place and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 563 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). Rule 9(b) also requires that the circumstances surrounding the alleged misrepresentations be pled with particularity. *Evans v. Pearson Enters.*, 434 F.3d 839, 852-53 (6th Cir. 2006).

While allegations of fraud may constitute a basis to pierce the corporate veil, *White*, 584 S.W.2d at 62, the Plaintiff in this case has failed to allege a fraud claim sufficient to pierce the corporate veil. The Plaintiff's sole allegation of fraud is in Count III of the Complaint. Specifically, the Plaintiff alleges that it is entitled to damages "for the fraud perpetrated by the

defendants  .  .  . in receiving funds in the amount of $208,685.00 but not using the funds for the purpose intended under the above referenced contract." [Record No. 22]  While the Complaint generally states that the Defendants acted fraudulently in failing to use the funds provided to them as set forth under the contract, it fails contain any allegation relating to an alleged misrepresentation upon which the Plaintiff relied.  Therefore, the allegations in the Complaint are insufficient to satisfy the heightened pleading standards for fraud claims under Rule 9(b).  Moreover, having reviewed the Complaint, the Court finds that while allegations contained in Count III of the Complaint support a claim for conversion, they do not support a claim for fraud.  Therefore, there is no basis for piercing the corporate veil.  *See Sudamax Industria e Commercio de Cigaros, Ltda. v. Buttes & Ashes, Inc.*, 2006 WL 3627723, *2 (W.D. Ky. Dec. 8, 2006) (citing *Foster Wheeler Energy Corp. v. Metropolitan Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 203 (6th Cir. 1992).

In summary, because the Plaintiff has failed to set forth sufficient allegations to support piercing the corporate veil, Defendants Bumgardner, Lowe and Kinsey are shielded from personal liability and cannot be held liable for the alleged acts of GravelRoad.  Thus, the Court will grant the Defendants' motion for partial summary judgment on all the claims against Defendants Bumgardner, Lowe and Kinsey, individually.

### B.    Motion for Summary Judgment on the Punitive Damage Claim

The Defendants have also filed a motion for judgment in their favor, arguing that the Plaintiff has failed to state a cause of action against them "that would allow for the imputation of punitive damages." [Record No. 59]  Specifically, the Defendants note that the Plaintiff's

complaint primarily alleges a breach of contract claim but that it makes "passing reference to a claim of fraud." [Record No. 7] Therefore, according to the Defendants, the Court also should grant their motion for summary judgment on the Plaintiff's punitive damage claim.

In Kentucky, punitive damages are not available for breach of contract. *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844 (Ky. 1986). However, a plaintiff can recover for punitive damages if he/she can prove that an independent tort was committed in connection with the breach of contract. *See e.g., Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. App. 2007). As discussed above, the Court agrees with the Defendants that the Plaintiff has not properly alleged a fraud claim. However, it appears, based on the Court's review of the Complaint, that the Plaintiff has alleged a claim for conversion. Specifically, the Plaintiff alleges that the "defendants [ ] failed to purchase the equipment they were paid to purchase, in the sum of $208,685.00 and have misappropriated the funds and/or converted the funds to their own use thereby defrauding the plaintiff of their funds in the sum of $208,685.00." [Record No. 22, Amended Complaint ¶ 15] Further, the Complaint avers that "the plaintiff is entitled to damages against the defendants, jointly and severally, for the fraud perpetrated by the defendants upon the plaintiff in receiving funds in the amount of $208,685.00 but not using the funds for the purpose intended under the above referenced contract." [Record No. 22, Amended Complaint ¶ 17]

Conversion is the wrongful exercise of dominion and control over the property of another. *See Johnson Controls, Inc. v. Anson Stamping Co.,* 2000 WL 34249108 (W.D. Ky. March 27, 2000); *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626 (Ky. App. 1990).

While punitive damages may be awarded for conversion, a plaintiff cannot maintain a conversion claim in addition to a breach of contract claim unless he can establish the existence of an independent legal duty separate and apart from the contractual obligation. *See Francis v. Nami Resources Co.*, LLC, 2008 WL 852047 (E.D. Ky. March 28, 2008) (citing *Mims*, 226 S.W.3d at 836). In *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F.Supp.2d 785 (W.D. Ky. 2005), the court recognized that "a conversion claim and contract claims are not always incompatible." However, the court noted that a conversion claim cannot be brought where "the property right alleged to have been converted arises entirely from the contractual rights to compensation." *Id.* at 801.

In the present case, the Plaintiff alleges that the Defendants were paid $208,685.00 to purchase equipment and other items needed to perform their obligations under the contract. However, the Plaintiff claims that the Defendants failed to use the money "for the purpose intended under the . . . contract." [Record No. 22, Amended Complaint ¶ 17] Clearly, the property right alleged to have been converted arises entirely from rights created under the contract. Here, the Plaintiff is seeking repayment of the monies it paid to the Defendants because the Defendants allegedly breached the contract by failing to perform their obligations under the contract. Whether the Plaitniff is entitled to the $208,685.00 and whether the Defendants failed to perform is governed by the terms of the parties' contract. Therefore, the Plaintiff cannot maintain a claim for conversion inasmuch as "sole property right alleged to have been converted is the contractual right to compensation." *See Ashland, Inc. v. Windward Petroleum*, 2006 WL 1913364 (E.D. Ky. July 11, 2006).

-11-

Because the Plaintiff has failed to state a claim for conversion and because punitive damages are not available in this action for breach of contract, the Court will grant the Defendants' motion for summary judgment on the punitive damage claim.

### C.    Motion in Limine

Finally, the Defendants have moved the Court to exclude certain evidence they expect the Plaintiff will seek to present at trial.  Specifically, the Defendants seek to prevent the Plaintiff from introducing a statement made by Defendant Slade Bumgardner in an E-mail to Angie Blankenship, a former employee of one of the Plaintiff's parent companies.  Through this E-mail, Bumgardner asks Blankenship to have Terry Forcht, the owner of First Construction, call him about the construction project.  Blankenship responds that he needs to speak with Greg Johnson, the construction manager.  In reply, Bumgardner states "[t]his has nothing to do with Greg.  But, if you want to keep playing stupid games and wasting more time, that's fine." [Record No. 60, Ex. A]

The Defendants assert that, because this is a breach of contract action, Bumgardner's statement is not relevant to the issues in this case.  However, if the Court finds that the evidence is relevant, the Defendants contend that the evidence is inadmissible under Rule 403 because its probative value is substantially outweighed by its prejudicial effect.

The Plaintiff argues that the statement is relevant "to show Bumgardner's bad temper, unprofessionalism and his pre-disposition to not complete the job he had been hired to do." [Record No. 68]  Further, the Plaintiff asserts that this E-mail is relevant to show "Bumgardner's

-12-

state of mind and whether or not he intended to get the job done or blame other for his failure."

[Record No. 68]

As a starting point of admissibility, the Court notes that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. R. 401. Rule 404(a) of the Federal Rules of Evidence carefully limits the circumstances under which character evidence may be admitted to prove that an individual, at the time in question, acted in conformity with his character. This rule is necessary because of the high degree of prejudice that inheres in character evidence. The exceptions to Rule 404(a)'s general ban on the use of character evidence permit criminal defendants to offer evidence of their own character or of their victim's character. Fed.R.Evid. 404(a)(1)-(2). Therefore, in civil cases, evidence of character to prove the conduct of the person is generally not admissible. *See Ginter v. Northwestern Mut. Life Ins. Co.*, 576 F. Supp. 627 (E.D. Ky. 1984).

Having reviewed the Plaintiff's response, it is clear that the Plaintiff seeks to admit Bumgardner's statement for the purpose of showing that he had a bad temper and a propensity not to complete the task. This is the type of character evidence that is prohibited by Rule 404. Therefore, the Court will grant to Defendants' motion in limine to exclude this statement under Rule 401 and 403 of the Federal Rules of Evidence.

## IV.    CONCLUSION

For the reasons discussed above, it is hereby **ORDERED** as follows:

1.    The Defendants' motion for summary judgment on the claims against Defendants Slade Bumgardner, Adam Lowe and Derrick Kinsey, individually, [Record No. 58] is **GRANTED**;

2.    The Defendants' motion for summary judgment on the Plaintiff's punitive damages claim [Record No. 59] is **GRANTED**; and

3.    The Defendants' motion in limine [Record No. 60] is **GRANTED**.

This 12th day of May, 2008.

Signed By:

*Danny C. Reeves*    DCR

United States District Judge